J. S76027/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LINELL CHARLES JAMES, | : | |
| | : | |
| Appellant | : | |
| | : | No. 295 EDA 2016 |

Appeal from the Judgment of Sentence December 21, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0002627-2015

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E. [*]

MEMORANDUM BY DUBOW, J.:                    **FILED JANUARY 25, 2017**

Appellant, Linell Charles James, appeals from the Judgment of Sentence entered in the Lehigh County Court of Common Pleas following his convictions for Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms and Firearms Not to be Carried Without a License.[1]  On appeal, Appellant challenges the denial of his motion to suppress the firearm recovered following a **Terry**[2] stop and frisk of his person.  After careful review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1) and 18 Pa.C.S. § 6106(a)(1), respectively.

[2] **Terry v. Ohio**, 392 U.S. 1, 30 (1968).

We summarize the factual and procedural history as follows. Officer Ryan Koons is a member of the City of Allentown Police Department with more than a decade of experience, education, and training. N.T., 9/3/15, at 6-7. In 2015, Officer Koons was assigned to the Strategic Enforcement Detail ("SED"), which is specially tasked with "investigat[ing] street crimes, drug dealings, and gangs." *Id.*

On the evening of May 22, 2015, Officer Koons was working alongside other members of the SED, patrolling near the intersection of 7th Street and Turner Street. *Id.* at 9-10. It was a high-crime area, known for drug activity, and Officer Koons had personally made "many" arrests "for firearms and drugs" in the area. *Id.* at 11-12. In addition, as a member of the SED, Officer Koons was aware that in the months leading up to May 22, 2015, a number of armed robberies had taken place in bodegas and other businesses in the area. *Id.* at 12, 14. These robberies often occurred in the evening hours, sometimes as frequently as "two armed robberies in one night within a 15-minute time span . . . ." *Id.* at 12.

That evening, Officer Lobach,[3] a member of the SED, advised Officer Koons and other SED members that a male subject ("Subject A") was seen loitering outside of "a known drug location" wearing a white T-shirt and "manipulating something very small in his hand." *Id.* at 10. Members of

---

[3] The first names of Officer Lobach and other members of the SED do not appear in the record.

the SED observed Subject A meet up with a second male and enter Madina Chicken ("Madina's"), a fried chicken shop located at the intersection of 7th Street and Turner Street. *Id.* at 15.

Officer Koons, Officer Lobach, and Officer Murray assembled outside of Madina's, and observed Subject A and Appellant inside of the business. *Id.* at 16. All of the lights inside of the business were off, which was surprising to Officer Koons because he knew that Madina's was normally open at that hour. *Id.* When officers entered Madina's, they saw the owner standing behind the counter, staring at the officers without saying a word, which Officer Koons also thought was "odd." *Id.* at 16-17. When one of the officers asked the owner about the two men, he told officers that "they weren't customers, [and] that they weren't purchasing anything." *Id.* at 23.

While Officers Lobach and Murray spoke with Subject A, Officer Koons asked Appellant what they were doing in Madina's while all of the lights were out. *Id.* at 17. Appellant told Officer Koons that he was waiting for a friend who was in the bathroom. *Id.* at 17-18. Officer Koons noticed "a big sign on the door that says the bathroom is out of order." *Id.* at 18. Officer Howells, who had recently arrived on scene, approached and removed an obviously intoxicated male ("Subject B") from the bathroom marked "out of order." *Id.* Officer Howells placed Subject B under arrest, and began searching him incident to arrest. *Id.* at 19.

Until that point, Officer Koons had been standing next to Appellant inside of the small restaurant, and had not spoken to him other than to ask him why he was standing in a darkened restaurant. At no point did Officer Koons or any of the other officers present draw their weapons. When Officer Howells began placing Subject B under arrest, Officer Koons asked Appellant to write down his name and date of birth. *Id.* at 22. Officer Koons observed Appellant was nervous and his hands were shaking while he wrote. *Id.* at 29.

Officer Koons observed Officer Howells removing heroin from Subject B, and heard him comment on the quantity of heroin recovered. *Id.* at 20. At that point, Officer Koons became concerned that Appellant might have a weapon. *Id.* at 21. He asked Appellant for permission to search him, and Appellant "slowly started to put his hands up[.]" *Id.* Officer Koons conducted "a light pat-down" and immediately recognized the feel of a firearm handle tucked into Appellant's waistband. *Id.* Officer Koons recovered a loaded firearm, and placed Appellant under arrest.

Appellant was charged with one count each of Persons Not to Possess, Use, Manufacture, Control, Sell or Transfer Firearms; Firearms Not to be Carried Without a License; and Disorderly Conduct.[4] Appellant filed a Motion to Suppress, averring that officers lacked reasonable suspicion to stop and

---

[4] The Disorderly Conduct charge was later withdrawn. *See* Motion for Leave to Amend Information, filed 11/10/15.

- 4 -

then frisk Appellant. Motion to Suppress, filed 8/5/15, at 2 (unpaginated). Following a hearing, the trial court denied the Motion in a written Opinion. Opinion and Order Denying Motion to Suppress, filed 9/18/15.

After a bench trial, the court convicted Appellant of both firearms charges and sentenced him on December 21, 2015, to a term of 42 to 84 months of incarceration.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises a single issue:

Whether the [t]rial [c]ourt erred in denying Appellant's Motion to Suppress a Firearm where there was no reasonable suspicion to detain or search [] Appellant who was merely waiting in a restaurant for a friend to come out of the bathroom, thereby violating Appellant's rights under the Fourth and Fourteenth Amendments of the United States Constitution and Under Article I Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 4.

In reviewing the denial of a suppression motion,

our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the evidence supports the factual findings of the suppression court, we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied.

*Commonwealth v. Page*, 59 A.3d 1118, 1131 (Pa. Super. 2013) (citation and brackets omitted).

In the instant case, Appellant avers that the trial court erred in finding that Officer Koons had reasonable suspicion sufficient to justify (i) subjecting Appellant to an investigatory detention, and (ii) subsequently patting him down for weapons. These events, often referred to collectively as a "***Terry*** stop and frisk," are distinct legal constructs. Separate tests govern the "stop" and the "frisk," and an officer who is justified in briefly detaining a suspect is not necessarily justified in patting him down. ***See, e.g., Commonwealth v. Preacher***, 827 A.2d 1235, 1239-40 (Pa. Super. 2003) (finding that, although officers were justified in conducting an investigatory stop of the appellant, they lacked the reasonable suspicion required to frisk him).

Our Supreme Court has summarized the distinct inquiries as follows:

It is well established that a police officer may conduct a brief investigatory stop of an individual if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. An investigatory stop subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Such an investigatory stop is justified only if the detaining officer can point to specific and articulable facts which, in conjunction with rational inference derived from those facts, give rise to a reasonable suspicion of criminal activity and therefore warrant the intrusion.

If, during the course of a valid investigatory stop, an officer observes unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that the suspect may be armed and dangerous, the officer may conduct a pat-

down of the suspect's outer garments for weapons. In order to justify a frisk under **Terry**, the officer must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous. Such a frisk, permitted without a warrant and on the basis of reasonable suspicion less than probable cause, must always be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.

**Commonwealth v. E.M.**, 735 A.2d 654, 659 (Pa. 1999) (citations and quotations omitted).

Reasonable suspicion, a requirement of both the "stop" and the "frisk," is a less stringent standard than probable cause. **Commonwealth v. Foglia**, 979 A.2d 357, 360 (Pa. Super. 2009). "In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered." **Commonwealth v. Simmons**, 17 A.3d 399, 403 (Pa. Super. 2011) (citation omitted). Given the totality of the circumstances, "the detaining officers must have a particularized and objective basis for suspecting the particular person[.]" **Id.** (quotation omitted). "[W]e must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience." **Commonwealth v. Kemp**, 961 A.2d 1247, 1255 (Pa. Super. 2008) (*en banc*) (citation and quotation marks omitted).

Appellant first asserts that officers lacked reasonable suspicion that Appellant was engaged in criminal activity as required to subject Appellant to a stop. Appellant's Brief at 12-14. Although the trial court did not make a finding regarding when, exactly, Appellant became the subject of an

investigatory stop, we believe the issue is irrelevant. Upon his first contact with Appellant, Officer Koons had sufficient reasonable suspicion to believe Appellant was engaged in criminal activity.

As Officer Koons testified, he observed Appellant and Subject A sitting in a darkened restaurant during what Officer Koons knew were the normal business hours of the restaurant. The restaurant was in a high crime area that had seen a string of recent armed robberies of bodegas and other businesses. When officers entered the restaurant, the owner remained silent and gave officers a blank stare. When asked about Appellant and Subject A, the owner stated that they were not customers. When asked what he was doing in the restaurant, Appellant said he was waiting for Subject B to finish "using" a bathroom clearly marked with an "out of order" sign. Under the totality of those circumstances, we find no error in the trial court's conclusion that Officer Koons had the requisite reasonable suspicion to conduct an investigatory stop of Appellant.

Appellant next avers that Officer Koons lacked reasonable suspicion to conduct a frisk of Appellant for weapons, asserting that Officer Koons impermissibly relied on the theory that "guns follow drugs" to justify his belief that Appellant was armed and dangerous. Appellant is correct that our Supreme Court has stated that, "as a general policy consideration, taking judicial notice that all drug dealers may be armed as in and of itself a sufficient justification for a weapons frisk clashes with the totality of the

circumstances standard, as well as the premise that the concern for the safety of the officer must arise from the facts and circumstances of the particular case." ***Commonwealth v. Grahame***, 7 A.3d 810, 816 (Pa. 2010) (citation and quotation omitted). Appellant is incorrect, however, in his characterization of the facts adduced at the hearing on his Motion to Suppress, and is not entitled to relief on his claim under the facts as they exist in the record.

At the hearing on Appellant's Motion to Suppress, Officer Koons described his decision to frisk Appellant as follows:

> Well, now with the lights out, you know, the aforementioned stuff about my thoughts about potential robberies and that, the fact that his - - he's putting himself with the guy that's in the bathroom now that has what I know now to be a large quantity of drugs, and through my training and experience, I know that guns sometimes go with drugs, so my concern was that there could be either more contraband there or possibly a weapon.

N.T., 9/3/15, at 20-21.

It is clear from the record that, while Officer Koons did rely in part on his experience that "guns follow drugs," his reasonable suspicion was properly based upon the **totality** of the circumstances and based upon his observations of Appellant individually. Among other relevant facts, discussed ***supra***, Officer Koons knew that Madina's was located in a high crime area beset with armed robberies. Often, these robberies occurred in the evening hours and targeted businesses. Officer Koons observed Appellant waiting in a darkened restaurant with an explanation he believed

to be implausible given the sign on the bathroom. He also personally observed the owner behaving oddly, and saw Appellant's hands shake as he wrote down his name and date of birth. Under the totality of those circumstances, we find no error in the trial court's conclusion that Officer Koons had the requisite reasonable suspicion to conduct a pat-down of Appellant.

Based on all of the foregoing, we conclude that the trial court properly denied Appellant's Motion to Suppress.

Judgment of Sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/25/2017</u>